## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

TALLAS BRADLEY,

      Petitioner,

v.                                                    Case No. 4:19cv89-RH-MJF

MARK S. INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Tallas Bradley has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 13). Bradley did not reply. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Bradley is not entitled to habeas relief.[1]

## I.   Background and Procedural History

The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 13, Attach. 1-2, Ex. C (trial transcript)). In April 2014, Bradley, then 35-years old, lived with his mother (Dorothy Bryant) and his

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

brother, Harvey Walden. On April 29, 2014, at around 1:00 a.m., Bradley burned food he was cooking, and became irate. Bradley began cursing and destroying items in the kitchen. Bryant and Walden were sufficiently alarmed by Bradley's behavior that they called the police. Bryant reported to the 911 dispatcher that Bradley was "tearing up the house;" she was afraid; and that she was unsure if Bradley had any weapons but knew he did not have a gun.

Leon County Sheriff's Deputy Michael Crego responded to the 911 call. When he arrived, Bradley was walking across the front yard of Bryant's house while angrily shouting toward the house. Crego identified himself to Bradley and asked Bradley to come and talk to him. Bradley asked Crego if he was under arrest. Crego explained that Bryant reported a disturbance at her home; that Crego was investigating the disturbance; and that he was going to detain Bradley until he could determine what was going on. Crego wanted to detain Bradley and investigate further, because "there was either an alleged criminal mischief violation where he was destroying somebody else's property; or his activity is consistent with somebody who maybe has mental illness or substance abuse problems and needs to be evaluated for either a Baker or Marchman Act." (Doc. 13, Attach. 1, Ex. C at 93).

Bradley unleashed "a bunch" of expletives, but slowly began to walk toward Crego's patrol vehicle. At first, Crego merely ushered Bradley by placing a hand on his shoulder, but after Bradley stopped walking and started arguing with Crego,

Crego used his left hand to grasp Bradley's right arm and usher him to the patrol car. Bradley then turned toward Crego and, with his left arm, pushed Crego in the chest. Crego attempted to secure Bradley by taking him to the ground. Bradley swung at Crego, hitting Crego in the head with his open hand. Bradley and Crego rolled to the ground and began to "tussle." During the entire encounter, Deputy Crego repeatedly told Bradley to stop fighting and stop resisting, but Bradley continued to resist Crego's attempts to secure him. At one point, Bradley straddled Crego and appeared to be preparing to hit him. Crego grabbed Bradley's head and held Bradley to his chest. Eventually, Crego was able to roll Bradley onto his back and secure one of Bradley's arms. Bradley continued physically struggling with Crego while shouting expletives.

Sergeant Benedict arrived during the tussle and attempted to secure Bradley's left arm. Benedict instructed Bradley to put his left arm behind his back and to stop resisting, but Bradley refused and resisted to the point where Benedict had to use both hands to bring Bradley's left arm behind his back. Once Crego and Benedict secured Bradley's hands, they attempted to escort him to Crego's patrol car. Bradley repeatedly tried to pull away and, eventually, refused to walk. Rather than dragging Bradley to the car, Crego and Benedict placed him down and encouraged him to walk to the car. When Bradley refused, Crego and Benedict carried Bradley to Crego's patrol vehicle.

Inside the vehicle, Bradley laid down on the seat and tried to kick out one of the windows. The officers placed Bradley in a leg restraint to prevent him from kicking. Using a cigarette lighter that was in his pocket, Bradley then set fire to one of the seatbelts in Crego's vehicle. The officers moved Bradley to another officer's patrol vehicle (Deputy Holliday), and Holliday transported Bradley to the jail. During the drive, Bradley verbally threatened Holliday, spit at the plastic partition separating them, and struck the partition several times. At the jail, officers placed a spit mask on Bradley. It took three officers to move Bradley inside the jail, with Bradley resisting and kicking at every opportunity.

In Leon County Circuit Court Case No. 2014-CF-1276, Bradley was charged with Battery on a Law Enforcement Officer (striking Deputy Crego) (Count 1); Resisting an Officer with Violence in the Lawful Execution of a Legal Duty (Count 2); and Arson of a Vehicle (Count 3). (Doc. 13, Attach. 1, Ex. A at 13).[2] A jury found Bradley guilty of all counts as charged. (*Id*. at 33-35 (verdict)). The trial court adjudicated Bradley guilty and sentenced him to a total term of 10 years of

---

[2] Citations to the state court record are to the electronically filed exhibits attached to the State's answer. (Doc. 13). The citation refers to the electronic attachment number followed by the lettered exhibit. If a page of an exhibit bears more than one page number, the court cites the Bates stamp number appearing at the bottom right corner of the page.

imprisonment.[3] (*Id*. A at 39-48 (judgment and sentence)). The Florida First District Court of Appeal ("First DCA") affirmed on February 22, 2016, *per curiam* and without written opinion. *Bradley v. State*, 184 So. 3d 519 (Fla. 1st DCA 2016) (Table) (copy at Attach. 3, Ex. G).

On February 3, 2017, Bradley filed a *pro se* petition for writ of habeas corpus in the First DCA, in which he alleged ineffective assistance of appellate counsel. (Attach. 3, Ex. H)). On February 27, 2017, the First DCA denied the petition on the merits. (Attach. 3, Ex. I).

On February 8, 2017, Bradley filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Attach. 3, Ex. J at 3-19). The state circuit court conducted an evidentiary hearing on September 5, 2017, during which Bradley was assisted by counsel. (Attach. 4, Ex. J at 238-294 (evidentiary hearing transcript)). At the close of the hearing, the state court denied relief after making oral findings on the record. (*Id*. at 288-93). The court reduced its ruling to a written order filed on September 6, 2017. (*Id*. at 236). The First DCA affirmed *per curiam* and without written opinion. *Bradley v. State*, 267 So. 3d 353 (Fla. 1st DCA 2018) (Table) (copy at Attach. 4, Ex. M). The mandate issued April 24, 2019. (*Id*.).

---

[3] Bradley was sentenced to concurrent terms of 5 years of imprisonment for the Battery and the Resisting an Officer charges, and a concurrent term of 10 years of imprisonment for the Arson offense.

Bradley filed his *pro se* federal habeas petition on February 11, 2019. (Doc. 1). Bradley's petition raises four grounds of ineffective assistance of trial counsel. (*Id*.). The State asserts that Bradley is not entitled to habeas relief because he fails to meet the § 2254(d)'s demanding standard. (Doc. 13).

## II.    Relevant Legal Principles

### Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[4] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[4] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized that a state prisoner's burden under §
2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at
102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete
> bar on federal-court relitigation of claims already rejected in state
> proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333,
> 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata
> rule" under § 2244). It preserves authority to issue the writ in cases
> where there is no possibility fairminded jurists could disagree that the
> state court's decision conflicts with this Court's precedents. It goes no
> further. Section 2254(d) reflects the view that habeas corpus is a "guard
> against extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal. *Jackson v.
> Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560
> (1979) (Stevens, J., concurring in judgment). As a condition for
> obtaining habeas corpus from a federal court, a state prisoner must
> show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility
> for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a
petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See
Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue
unless the petitioner shows that he is in custody "in violation of the Constitution or
laws and treaties of the United States."  28 U.S.C. § 2254(a).

**<u>Clearly Established Federal Law Governing Claims of Ineffective Assistance</u>**

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that

presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.    Discussion

<u>**Ground One**</u>          <u>**"Counsel's Failure and Refusal to Move for a Judgment of Acquittal Following the State's Failure to Prove Second Degree Arson Constitutes Second Degree Arson [sic], in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments." (Doc. 1 at 16).**</u>

Bradley claims that trial counsel, Justin Ward, was ineffective for failing to move for a judgment of acquittal on the Arson charge on the ground that the evidence was insufficient to prove that "the accused did cause damage to the vehicular structure, which the specified statute insists for a proper violation of second degree arson to be sustained." (Doc. 1 at 16). The parties agree that Bradley presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Bradley briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 6; Doc. 13 at 17-19).

### A.    State Court's Decision

Bradley presented this claim to the state courts as Ground One of his Rule 3.850 motion. (Doc. 13, Attach. 3, Ex. I at 5-7). The state circuit court orally rejected the claim at the close of the postconviction evidentiary hearing:

> All right, Ground 1 is a failure to move for judgment of acquittal on the arson charge. There was clearly no basis to do so, therefore, it wasn't ineffective assistance of counsel. Mr. Ward announced that on the record. Judge Lewis actually made a ruling, he said, he finds there's a

> prima facie case. Obviously, even had Mr. Ward made an argument, it
> would have been denied by Judge Lewis. But I don't find that there was
> a basis to start with. Lawyers aren't required to make arguments that
> are groundless. There was no ineffective assistance of counsel, there
> was no prejudice. And I guess I should specify these – not all case – all
> claims result – involve all counts. This only involved Count 3, the arson
> charge.

(Attach. 4, Ex. J at 288-89). The court reduced its ruling to a written order. (*Id.* at

236). The order stated, in relevant part: "Based on the reasons as announced on the

record, the Court finds that defendant has failed to show that he received ineffective

assistance of counsel or that he was prejudiced by any alleged deficiency." (*Id.*). The

First DCA summarily affirmed. (Attach. 4, Ex. M).

## B.    Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of

Bradley's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*,

562 U.S. at 99 ("When a federal claim has been presented to a state court and the

state court has denied relief, it may be presumed that the state court adjudicated the

claim on the merits in the absence of any indication or state-law procedural

principles to the contrary); *id.* at 100 ("This Court now holds and reconfirms that §

2254(d) does not require a state court to give reasons before its decision can be

deemed to have been 'adjudicated on the merits.'"). Because the First DCA's

decision was unaccompanied by an explanation, this court looks through the

unexplained decision to the state circuit court's reasoned order and presumes that

the First DCA adopted the same reasoning. *See Wilson v. Sellers*, 584 U.S. __, 138 S. Ct. 1188, 1192 (2018) (holding that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

In Florida, second-degree Arson is defined as follows:

> Any person who willfully and unlawfully, or while in the commission of any felony, by fire or explosion, damages or causes to be damaged any structure, whether the property of himself or herself or another, . . . is guilty of arson in the second degree, which constitutes a felony of the second degree[.]

Fla. Stat. § 806.01(2) (2014). The statute defines "structure" as "any building of any kind, any enclosed area with a roof over it, any real property and appurtenances thereto, any tent or other portable building, and any vehicle, vessel, watercraft, or aircraft." Fla. Stat. § 806.01(3).

The state court found as fact that Attorney Ward made a tactical decision not to move for a judgment of acquittal because there was no basis for it. This finding is amply supported by the record. Ward testified at the postconviction evidentiary hearing:

> [The State]: Can you tell us why it is that you didn't ask for a judgment of acquittal on the second-degree arson count, as alleged against Mr. Bradley?

[Ward]: It wasn't just the seat belt that was burned, but there was also the testimony from Deputy Crego that said that the seat itself was damaged also. I don't think that I had a viable motion for JOA.

(Doc. 13, Attach. 4, Ex. J at 274).

The trial transcript confirms Ward's evidentiary hearing testimony. At the close of the State's case, the trial judge asked Ward:

THE COURT: Motion?

MR. WARD: Judge, I don't feel I have a good faith JOA motion.

THE COURT: I agree. I think there's prima facie evidence anyway if the jury believes it.

(Attach. 2, Ex. C at 138).

The state postconviction court concluded that Ward's tactical decision was reasonable, and that Bradley's proposed motion for a JOA would have been denied, because the State presented sufficient evidence to prove that Bradley's fire damaged Crego's patrol vehicle. Fairminded jurists can concur in these conclusions. Deputy Crego testified at trial:

[Prosecutor]: Can you describe the size of the fire, where the fire was?

[Deputy Crego]: The fire was on the seat belt directly to the left where Mr. Bradley was sitting, and was still smoldering at the very base where the seat belt buckle is, and at the top where the seat belt goes into the plastic seat.

. . . .

> The seat belt itself was gone. It had completely burned up. The buckle at the bottom end was melted, and the seat – the hard plastic seat itself was melted and damaged at the top.

(Attach. 2, Ex. C at 99). The State also introduced photographs of the damage to Crego's vehicle. (Attach. 2, Ex. D).

The state court's rejection of Bradley's claim for failure to establish deficient performance and prejudice was neither contrary to, nor an unreasonable application of, the *Strickland* standard. *See, e.g., Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Freeman v. Attorney Gen., Fla*., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). Bradley is not entitled to federal habeas relief on Ground One.

<u>**Ground Two**</u>        <u>**"Counsel Failed and Refused to Request a Jury Instruction to Defend Against the Conjecture of Second Degree Arson, in Violation of the Fourth, Fifth, Sixth and Fourteenth Amendments." (Doc. 1 at 17).**</u>

Bradley claims that Ward was ineffective for failing to request "a special jury instruction articulating that the minor burn to an insignificant component is not in itself arson." (Doc. 1 at 17). The parties agree that Bradley presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief

on the merits in a reasoned order; that Bradley briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 7-8; Doc. 13 at 26-27). The State argues that Bradley is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 13 at 27-32).

### A.    State Court's Decision

Bradley presented this claim to the state courts as Ground Two of his Rule 3.850 motion. (Doc. 13, Attach. 3, Ex. I at 7-9). The state circuit court rejected the claim at the close of the postconviction evidentiary hearing:

> Ground 2, again, only involves the arson charge. The – it says there was a failure to request a special instruction on arson. I don't find that there was any legally insufficient instruction on arson. The defendant could not even tell us, even in his own words, what it is the Court was supposed to tell the jury, that would have been different. The legal instruction on arson, as – as I determine, was a legally appropriate instruction. I'm not sure what other kind of special instruction could have been given.

> I know it's a little hard for defendants to understand, but lawyers understand, the Court cannot comment on the facts of the case, nor instruct the jury how to apply facts to the law. I think that's what Mr. Bradley, essentially is suggesting. Mr. Ward did make an argument, Page 56, Volume I, that the car wasn't burned; that was in his opening statement. The jury rejected that. Page 99 of the testimony shows testimony that the seat belt was burned up. The – there was, Page 100, that there was a lighter on the floor. There clearly was sufficient evidence on – about the arson, but I don't see that there was any ineffective assistance of counsel, nor any prejudice on failure to give a special instruction.

(Attach. 4, Ex. J at 289-90). The ruling was followed by a written order rejecting Bradley's claim for the reasons stated on the record. (Attach. 4, Ex. J at 236). The First DCA summarily affirmed. (Attach. 4, Ex. M).

### B.    Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Bradley's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's final order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

Fairminded jurists can concur in the state court's conclusion that trial counsel was not ineffective for failing to request Bradley's proposed jury instruction. At trial, the jury was instructed on Arson as follows:

> To prove the crime of Arson, the State must prove the following elements beyond a reasonable doubt:

> 1.    Tallas Bradley willfully and unlawfully caused a fire.

> 2.    A vehicle was damaged by the fire.

> In order to convict the defendant of Arson, it is not necessary for the State to prove that he intended to damage the vehicle.

> "Willfully" means intentionally, knowingly, and purposely.

> "Unlawfully" means without a legitimate, lawful purpose.

(Doc. 13, Attach. 1, Ex. A at 25). The trial court also instructed the jury that "[t]he lesser crime indicated in the definition of Arson of Vehicle is Criminal Mischief." (*Id*. at 26). The court gave the following instructions on Criminal Mischief:

> To prove the crime of Criminal Mischief, the State must prove beyond a reasonable doubt that Tallas Bradley willfully and maliciously did damage to the property of The Leon County Sheriff's Office.
>
> "Willfully" means intentionally, knowingly and purposely.
>
> "Maliciously" means wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage will or may be caused to another person or the property of another person.

(*Id*. at 27).

The state postconviction court concluded, as a matter of state law, that the jury instructions accurately and adequately stated Florida law, and that Bradley was not entitled to the "special instruction" he proposed, because the determination whether the fire damaged the vehicle was a fact issue to be resolved by the jury. This court defers to the state court's determination of state-law issues. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("'It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (quoting *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005))).

Because the instructions on Arson and Criminal Mischief accurately stated the law and already covered Bradley's proposed instruction, and the question of whether Bradley's fire damaged the vehicle was a fact question for the jury to decide, the state court reasonably concluded that counsel was not ineffective for failing to request Bradley's special instruction. *Pinkney*, 876 F.3d at 1297; *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *see also Sabillo v. Sec'y, Dep't of Corr.*, 355 F. App'x 346, 349 (11th Cir. 2009) (denying habeas relief on a claim because counsel could not be ineffective for failing to request an instruction to which the petitioner was not entitled).

The state court's rejection of Bradley's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Bradley is not entitled to habeas relief on Ground Two.

**<u>Ground Three</u>      <u>"Counsel Failed and Refused to Request a Jury Instruction of Non Deadly Force in Self Defense, in Violation of the Fourth, Fifth, Sixth and Fourteenth Amendments." (Doc. 1 at 18).</u>**

Bradley claims that Ward was ineffective for failing to request a jury instruction on the justifiable use of non-deadly force. Bradley argues that he was entitled to the instruction for these reasons:

> The record vigorously demonstrates that the accused was not under lawful restraint at the time the accused inadvertently barely touched the alleged victim absent any threat or forceful impact. The evidence introduced in this matter patently vindicates the accused, a man of only 5'6", in self-defense for his life, against another man of 6', 235 lbs, who personally testified that the accused was not under lawful restraint at the time the accused came into contact with the alleged victim, a governmental person, who was directly and proximately responsible for dispatching excessive wanton force against the accused.

(Doc. 1 at 18).

The parties agree that Bradley presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Bradley briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 8-9; Doc. 13 at 32-33). The State argues that Bradley is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 13 at 33-39).

### A.    State Court's Decision

Bradley presented this claim to the state courts as Ground Five of his Rule 3.850 motion. (Doc. 13, Attach. 3, Ex. I at 13-16). The state circuit court rejected the claim at the close of the evidentiary hearing:

> Ground 5, is that there was a failure to request a non-deadly force instruction. This would apply only to Counts 1 and 2. I'm – I'm – I don't even understand the theory of what a non-deadly force instruction would have done in this case. The defendant was found guilty of a felony, the battery on a law enforcement officer. A non-deadly force instruction wouldn't have had anything to do with that. But perhaps more importantly, Mr. Ward indicated it was a strategy decision, not to go into self defense; but to argue that there was no battery, there was

no intentional touching. Therefore, there was no battery. I think that is a reasonable strategy decision, that would have been counter productive to mix in there a – some type of self-defense instruction. I don't find there was ineffective assistance of counsel, nor prejudice to the defense.

(Attach. 4, Ex. J at 291-92). The court's ruling was followed by a written order. (Attach. 4, Ex. J at 236). The First DCA summarily affirmed. (Attach. 4, Ex. M).

## B.    Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Bradley's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's final order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

This court defers to the state court's factual findings, because they are amply supported by the record and because Bradley has not rebutted them with clear and convincing evidence to the contrary. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (holding that the AEDPA "affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)). This deference extends to the state court's determination that Ward's evidentiary hearing testimony was credible. Eleventh Circuit precedent requires this deference. "Determining the credibility of

witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

Ward testified that he made a tactical decision not to request a self-defense instruction, "[b]ecause that wasn't our strategy. We were arguing that he didn't willfully strike him at all." (Doc. 13, Attach. 4, Ex. J at 279 (postconviction hearing testimony; *see also* Attach. 1, Ex. C at 54-56 (defense opening argument); Attach. 2, Ex. C at 177-184 (defense closing argument)). Ward also explained: "I think that if the jurors heard a self-defense instruction, or if I made some kind of argument to that effect, I would have lost credibility. It would be grasping for straws." (*Id.* at 285).

Given the evidence at trial and the defense Bradley presented (that he did not intentionally strike Deputy Crego at all and that any testimony otherwise was a fabrication), it was reasonable for the state court to conclude that Ward's tactical decision not to request a self-defense instruction was objectively reasonable. Bradley failed to show that "no competent counsel" would have declined to request an instruction on self-defense. *See Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) ("[F]or a petitioner to show that the conduct was unreasonable, a

petitioner must establish that no competent counsel would have taken the action that his counsel did take."); *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."); *see also Jenkins v. Sec'y, Fla. Dep't of Corr.*, 520 F. App'x 871, 873 (11th Cir. 2013) (holding that the state court reasonably concluded that counsel was not ineffective for failing to request an instruction on self-defense when the petitioner presented an actual-innocence defense, not a defense of self-defense).

The state court's rejection of Bradley's claim was not contrary to or an unreasonable application of the *Strickland* standard, nor was the ruling based on an unreasonable determination of the facts. Bradley is not entitled to habeas relief on Ground Three.

**Ground Four**     **"Counsel Failed and Refused to Request and Present Special Jury Instruction to Address a Reflex or Accidental Battery Defense, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments." (Doc. 1 at 19).**

Bradley's final claim faults Ward for failing to request a special jury instruction that an accidental touching does not constitute Battery. Bradley explains:

> The evidence made in the State's case patently demonstrates that the alleged battery against Mr. Crego was consequent to an inadvertent reflex as the accused, aided by a cane, struggled to maintain his balance after Mr. Crego offered blows that ultimately landed him to the ground.

> The standard jury instruction was severely inadequate to address the accused circumstance. It did not contain the existence of a mere accidental touching transacted by a stumbling, physically challenged man. The trial court, had counsel moved to do so, would have entertained instructions to assist the jury to make a proper determination on the evidence constituting the accidental touch occurred during Mr. Crego's unconstitutional encroachment.

(Doc. 1 at 19).

The parties agree that Bradley presented this claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Bradley briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 10-11; Doc. 13 at 40). The State argues that Bradley is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 13 at 40-45).

### A.   State Court's Decision

Bradley presented this claim to the state courts as Ground Six of his Rule 3.850 motion. (Doc. 13, Attach. 3, Ex. I at 16-18). The state circuit court rejected the claim at the close of the evidentiary hearing:

> And lastly, Ground 6, failure to request a special instruction on reflex or accidental battery. We all know that battery is clearly defined as an intentional touching. Judge Lewis reiterated that, in response to the jury question. No special instruction was needed. I – I can't think of what – what else you would say, and – and Mr. Ward certainly argued that it was not an intentional act, on the defendant's part. That's what reflex or accidental involves, so there was no ineffective assistance of counsel, nor any prejudice.

(Attach. 4, Ex. J at 292). The court's ruling was followed by a written order rejecting Bradley's claim for the reasons stated on the record. (Attach. 4, Ex. J at 236). The First DCA summarily affirmed. (Attach. 4, Ex. M).

### B.    Section 2254 Review Of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Milton's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

Fairminded jurists could concur in the state court's conclusion that Ward was not ineffective for failing to request a special instruction that accidental touching does not constitute Battery. The court gave these instructions on Battery on a Law Enforcement Officer:

> To prove the crime of Battery on a Law Enforcement Officer, the State must prove the following elements beyond a reasonable doubt:
>
> 1.    Tallas Bradley intentionally touched or struck Michael Crego against his will or intentionally caused him bodily harm.
>
> 2.    Michael Crego was a law enforcement officer.
>
> 3.    Tallas Bradley knew Michael Crego was a law enforcement officer.

> 4.    Michael Crego was engaged in the lawful performance of his duties when the battery was committed.
>
> The court now instructs you that a Leon County Sheriff's Deputy is a law enforcement officer. The court further instructs you that affecting a lawful arrest or investigating a crime constitutes the lawful execution of a legal duty.

(Doc. 13, Attach. 1, Ex. A at 24).

The trial court also instructed the jury that "[t]he lesser crime indicated in the definition of Battery on Law Enforcement Officer is Battery." (*Id*. at 26). The jury instructions defined Battery as follows: "To prove the crime of Battery, the State must prove beyond a reasonable doubt that Defendant intentionally touched or struck Michael Crego against his will or intentionally caused him bodily harm." (*Id*.).

During deliberations, the jury asked two questions. The first read: "If law enforcement officer physically restrains someone and that person is startled or surprised, and subsequently pushes away (reflex), is that considered battery?" (Attach. 2, Ex. C at 197). The trial court, defense counsel and the prosecutor interpreted the question as "an intent question." (*Id*.). The trial court decided, and counsel agreed, to this approach:

> THE COURT:  . . . The only thing I know is to read the instruction of battery. Battery is the intentionally touching or striking of a person against their will, which they already have.

(*Id*. at 197).

The second jury question was: "If a person is engaging in violent behavior, destroying property, is it logical that they would 'slap' an officer, instead of punching, and, further, only slapped once? Thus, the question, is an accidental slap considered battery?" (*Id.* at 197-98). The trial court commented to counsel: "The same answer. An accidental touching is not an intentional touching." (*Id.* at 198).

The trial court brought in the jury and addressed their questions:

> THE COURT:  There are a couple of questions. I have discussed it with the attorneys and I think the best way – they're both related.

> On Number 2, I can't answer the question that is posed about if a person is engaging in violent behavior (destroying property), is it logical that they would slap an officer, instead of punching? That's a question of fact, not a question of law, that you will have to decide yourself.

> But both of them, in terms of the question of whether an accidental slap is considered a battery under Question Number 1, if somebody is startled or surprised and subsequently pushes away, is that considered battery, and all I can do is refer you to the jury instructions. And battery is defined in there in a couple of places, battery on a law enforcement and also in the lesser included offense of battery. But in each one it requires that the person intentionally touch or strike the other person against their will. So it has to be an intentional touching or striking.

(*Id.* at 199-200).

The state postconviction court reasonably concluded that Ward's failure to request an additional instruction on accidental or reflexive touching was neither deficient nor prejudicial. The jury instructions on Battery accurately and adequately stated the law, and covered the issue raised by Bradley's proposed instruction (that

an accidental or involuntary touching did not qualify as Battery). Bradley had the additional benefit of the trial court emphasizing, in its answer to the jury's questions, that the touching had to be *intentional* to qualify as a Battery. Bradley, therefore, cannot show that there was a reasonable probability the jury's verdict would have been different had they received yet another instruction on that issue.

The state court's rejection of Bradley's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Bradley is not entitled to habeas relief on Ground Four.

## IV.    Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is

whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. __, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Tallas S. Bradley*, Leon County Circuit Court Case No. 2014-CF-1276, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this 24th day of June, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**